THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHUNG A. MOORE, Defendant-Appellant.

Second District    No. 2—95—0967

Opinion filed January 13, 1998.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, and Phyllis J. Perko, of Law Offices of Harlovic & Perko, of West Dundee, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Michael A. Kreloff, of Northfield, for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Shung Moore, appeals his conviction of possession with intent to deliver 1 to 15 grams of cocaine (720 ILCS 570/401 (West 1996)) and criminal fortification of a residence (720 ILCS 5/19—5 (West 1996)). Defendant argues that the trial court erred in denying his motion to suppress evidence and erred in committing multiple instances of plain error. Defendant further argues that the State failed to prove him guilty beyond a reasonable doubt of possession of 1 to 15 grams of cocaine. We affirm.

Through various witnesses, the State presented testimony that defendant was operating a crack house at 706$^{1}$/$_{2}$ North Winnebago Street, Rockford, during early 1995. Arlene Lighthart, who lived in this apartment with her boyfriend and two children, testified that

she had known defendant for several years. She permitted defendant to use the apartment to sell crack cocaine for a period of four weeks during January and February. Defendant paid Lighthart $400 per week for the use of the apartment, and the continual sale of narcotics from the apartment earned him approximately $3,000 per day. Defendant then asked to use the apartment for an additional week because his other locations had been recently raided by the police.

Lighthart testified that defendant prepared the apartment for the sale of crack cocaine. He fitted the front door of the apartment with brackets that would allow it to be barricaded from the inside with three 2 by 4s. The back door was also barricaded. A latch was attached to the outside of the front door for a padlock. A deadbolt was removed from the front door to allow the exchange of drugs and money through the hole. It was explained that this preparation was to prevent buyers from entering the apartment, sellers from leaving the apartment, and as a way of slowing a police raid long enough for the crack cocaine to be destroyed.

On February 13, 1995, defendant allegedly began to use a new seller at the property. Clarence Richardson, who was 16 years old on that date, testified that he had worked for defendant packaging crack cocaine for approximately one month. Defendant approached him about selling the crack and Richardson agreed. On February 13, defendant drove Richardson to the Winnebago Street apartment in his red Camaro. Defendant then gave him a "500 pack" of crack cocaine and gave him some basic instructions on how to sell the drugs.

Lighthart testified that defendant drove her, her boyfriend, and her children from the apartment. He took them to a hotel because Lighthart had complained of the number of people frequenting the home and the occasional police car that would drive past.

Members of the Rockford police department and the Winnebago County sheriff's metro narcotics unit observed the apartment for several hours on February 13. Two police informants had let the police know that a crack house was being operated at the location and that the operator of the house drove a red Camaro or Firebird with a black bra. The informants stated that buyers would go to the front door of the apartment through an inner staircase. The door would be padlocked from the outside and barricaded from within. A buyer would knock on the door, place money through a hole in the door, and receive crack cocaine in return. A controlled buy was made from the apartment in the early afternoon and police obtained a search warrant.

The officers observing the apartment noticed a red Camaro in front of the apartment on several occasions. They processed the

license plate number and discovered that the car was registered to defendant. The officers were familiar with defendant. They saw him drive a man and a woman away from the apartment. Defendant later returned, honked the horn, and gave Richardson a brown paper bag.

The police raid of the apartment began at approximately 3 p.m. Officers saw defendant driving away from the apartment and detained him. Several officers approached the vehicle with guns drawn. Defendant turned the car off, threw the keys to the floorboard, and exited the car. Officers conducted a quick "pat down" and determined that defendant did not possess any weapons.

Meanwhile, the rest of the officers executed the search warrant on the apartment. They knocked on the door and loudly announced their presence and that they had a search warrant. Officers testified that they heard running from behind the door and used a battering ram to break through the barricade. Once through the door, the officers discovered Richardson alone in the apartment.

A plastic bag on a couch in the apartment contained 15 smaller baggies with suspected cocaine. Richardson's coat contained another bag with 41 baggies of suspected cocaine. Richardson had $193 in his pocket, another $170 was found on the couch, and an insurance check in the amount of $17 and addressed to defendant was found in the living room. The police also discovered several padlocks inside the apartment.

After defendant had been detained for approximately five minutes, an officer left the apartment and informed the officers with defendant of the discoveries in the apartment. The officers conducted a more thorough search of defendant and found a padlock key that was later matched to one of the padlocks found in the apartment. A narcotics dog was used to conduct a canine sniff test of defendant's automobile. The dog alerted the handler to the driver's door seam and inside behind the front passenger seat. The officer testified at trial to the dog's actions and explained that, although no drugs were found in the car, the dog may have detected residual odors from narcotics.

Defendant and Richardson were transported in a van to the police station. One of the officers present in the van testified that defendant instructed Richardson to "do the right thing" and accept blame for the crime because he was a juvenile and would not be harshly punished.

Defendant filed a pretrial motion to suppress the physical evidence collected from his person and from his automobile. Specifically, defendant wished to suppress the keys on his person, as well as two other sets of padlock keys, which also matched padlocks found in the

apartment, and the insurance check, which defendant claimed was in his vehicle. A hearing was held on the motion, and the trial court denied the motion to suppress.

The jury trial began on June 20, 1995. The State presented the testimony of many of the officers involved in the search of the apartment and the arrest of defendant. A police chemist testified that she examined 23 of the samples found during the search. These samples had a combined weight of 5.2 grams and each tested positive for the presence of cocaine. The remaining samples were not tested. Defendant did not present any evidence at trial.

The jury returned guilty verdicts on both charges of the indictment. Defendant filed a motion for a new trial, which was denied. Defendant was sentenced to concurrent prison terms of 14 and 5 years. Defendant timely appeals.

■ On appeal, defendant first argues that the trial court erred by denying his motion to suppress evidence. A trial court's ruling on a motion to suppress will not be disturbed unless that ruling is manifestly erroneous. *People v. Miller*, 173 Ill. 2d 167, 181 (1996). A police officer may approach an individual to investigate possible criminal behavior even when there is not sufficient probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). To justify stopping an individual, the officer must be able to point to "specific, articulable facts which, when taken together with the rational inferences from those facts, reasonably warrant the intrusion." *People v. Schacht*, 233 Ill. App. 3d 271, 275 (1992). "An objective standard is used in determining whether the facts and circumstances known to the officer at the time of the stop would warrant a person of reasonable caution to believe a stop was necessary to investigate the possibility of criminal activity." *People v. Walters*, 256 Ill. App. 3d 231, 234 (1994). The purpose of such a stop is to verify information or determine whether criminal activity has occurred. *Schacht*, 233 Ill. App. 3d at 275. An investigatory stop is not transformed into an arrest by the officers using force or displaying their firearms to detain the individual. *People v. Washington*, 205 Ill. App. 3d 452, 456 (1990). After all, "[i]t would be paradoxical to give police the authority to detain pursuant to an investigatory stop yet deny them the use of force that may be necessary to effectuate the detention." *People v. Starks*, 190 Ill. App. 3d 503, 509 (1989).

■ The record reflects many articulable facts from which the officers could have determined that defendant was involved in criminal activity. Two informants had told officers that cocaine was being sold from the apartment and that it was being delivered by a man in a red Camaro or Firebird with a black bra. Defendant was seen in

front of the apartment on several occasions in a red Camaro with a black bra. On one occasion, he delivered a brown paper bag. Officers learned that the car was registered to defendant and defendant was known to them as being involved in the sales of narcotics. Defendant attempted to drive away from the apartment when the raid began. He was stopped and asked to exit the vehicle during the search of the apartment. After five minutes, officers discovered a barricaded door, suspected narcotics, and an insurance check with defendant's name on it. Considering these factors, we find that the trial court's denial of the motion to suppress was not against the manifest weight of the evidence.

■ Defendant also argues that the court committed various instances of plain error. First, defendant argues that the trial court committed plain error by allowing Michael Schneider, an officer trained in handling police dogs, to testify regarding the canine sniff by his certified police dog, Lika. Defendant relies upon *People v. Cruz*, 162 Ill. 2d 314 (1994), for the proposition that "bloodhound evidence is inadmissible to establish any factual proposition in a criminal proceeding in Illinois." *Cruz*, 162 Ill. 2d at 369-70. While this is an accurate statement, it does little to support defendant's argument. In *Cruz*, our supreme court concluded that evidence of which direction a bloodhound attempted to track a scent could not be used to establish a factual proposition. *Cruz*, 162 Ill. 2d at 370. In the present case, however, the police used a certified dog to detect the presence of narcotics. "The use of trained dogs as a follow-up investigative technique to partially corroborate information received is, in our judgement, a useful, entirely reasonable and permissible procedure." *People v. Campbell*, 67 Ill. 2d 308, 317 (1977). The trial court did not err in finding that police officers acted reasonably in using the canine sniff test. This evidence was corroborated: Lighthart and Richardson both testified that defendant used his car to transport cocaine, and police officers observed defendant handing Richardson a paper bag inside the automobile.

This does not, however, address whether a police officer's testimony about the actions of a police dog would be considered hearsay. Despite a long history of cases involving police dogs to detect narcotics, there is a surprising dearth of information available on this specific issue. The parties have failed to provide any relevant authority, and our review of Illinois case law has also been unfruitful. In *United States v. Hubbard*, 61 F.3d 1261 (7th Cir. 1995), the United States Court of Appeals for the Seventh Circuit was faced with a similar situation. The court denied a pretrial motion *in limine* to suppress evidence of dog alerts to an automobile. In *Hubbard*, po-

lice dogs alerted police officers to the presence of narcotics in the defendant's automobile. The court stated that "the reaction of the police dog, although subject to different interpretations, was sufficiently probative of the presence of narcotics to be admissible." *Hubbard*, 61 F.3d at 1274. The court found the evidence of the dog alerts admissible, even though narcotics were not located in the automobile. We find this opinion, while not binding upon this court, persuasive in our determination of this matter.

■ Defendant also argues that the trial court erred in omitting a portion of a jury instruction. Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (3d ed. 1992) (hereinafter IPI Criminal 3d) states:

> "You have before you evidence that the defendant made statements relating to the offenses charged in the indictment. It is for you to determine [whether the defendant made the statements, and, if so,] what weight should be given to the statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." IPI Criminal 3d No. 3.06-3.07.

The trial court gave this instruction but struck the bracketed portion. The trial court found the instruction appropriate because of defendant's alleged conversations with Lighthart and Richardson. Defendant observes that the Committee Note to this instruction states that the bracketed material "should be deleted only when the defendant admits making all the material statements attributed to him." IPI Criminal 3d No. 3.06-3.07, Committee Note, at 79. Defendant suggests that it was improper to exclude the material because he had not taken the stand and, thus, did not admit making the statements.

The State correctly notes that this argument is counter to more than a decade of jurisprudence. "[T]he failure to include the bracketed language [does] not warrant reversal where defendant presented no evidence that defendant denied making the statement[s]. To allow otherwise would confuse the jury by making it decide an issue improperly before it." *People v. Garner*, 248 Ill. App. 3d 985, 992 (1993). Therefore, the trial court's failure to include the bracketed language does not warrant reversal.

Defendant also argues that the trial court committed plain error in allowing John Versetti, a Rockford police detective, to give opinion testimony about some of the common characteristics of the sales of crack cocaine. Versetti was the officer in charge of collecting physical evidence from the apartment during the raid. He testified at trial regarding the evidence. He also testified how crack cocaine is manufactured, the way it is ingested, and the street value of 5.2

grams of crack cocaine. He further testified that drug dealers use juveniles for sale because they can be easily intimidated and are afforded greater protection under the law and that the use of barricades and padlocks was common in the sales of crack cocaine. Finally, Versetti testified that possession of 56 baggies of crack cocaine was inconsistent with personal use and the typical crack user does not possess more than one baggie at a time.

Defendant argues that this testimony was improper for several reasons. Versetti should not have been allowed to be both an occurrence witness and an expert witness. Much of the testimony was allegedly irrelevant to the facts in the present case. Finally, the testimony of certain alleged characteristics of drug sales was prejudicial because the characteristics were present in this case.

■ A person is qualified to testify as an expert if her or his experience and qualifications provide knowledge that is not common to the layperson and where such testimony will assist the trier of fact. *People v. Jordan*, 103 Ill. 2d 192, 208 (1984). A police officer may qualify as an expert in certain areas; that determination is left to the sound discretion of the trial court. *People v. DeCesare*, 190 Ill. App. 3d 934, 942-43 (1989); see also *People v. Foules*, 258 Ill. App. 3d 645, 659-60 (1993). Defendant's challenge against the witness acting as both occurrence witness and expert is especially weak when it was defendant who objected to the witness' testimony and demanded that a foundation for the witness' qualifications be presented. See *United States v. Catlett*, 97 F.3d 565 (D.C. Cir. 1996).

■ Defendant's argument against the relevance of Versetti's testimony is also ill founded. The State had the burden of proving that defendant possessed cocaine with the intent to sell. Part of proving that the cocaine was intended for sale would necessarily be that the cocaine was not being merely manufactured in the apartment. Additionally, it would be important to prove that the cocaine was not for the personal use of Richardson or defendant. This testimony is highly relevant.

■ It was also not error, under the facts of the present case, for the trial court to allow Versetti to testify regarding the habits of drug dealers. Defendant is correct in noting that testimony of extensive "profile" evidence that is unrelated to the case may prejudice a criminal defendant. See *People v. Brown*, 232 Ill. App. 3d 885, 889-900 (1992). However, a police expert may give evidence that is not extensive and that relates to the facts in the case. *People v. Stone*, 244 Ill. App. 3d 881, 890 (1993). In the present case, Versetti's expert testimony was brief and related directly to the facts in this case.

■ Defendant's final argument is that the State failed to prove

him guilty beyond a reasonable doubt because only a portion of the evidence was tested to prove that it contained cocaine. Defendant cites to our supreme court's recent decision in *People v. Jones*, 174 Ill. 2d 427 (1996), for support. In *Jones*, the court overturned a conviction of possession of 1 to 15 grams of cocaine because only two of five specimens were tested. Defendant fails to note the reason why this conviction was overturned. The total weight of the packets of cocaine tested in *Jones* amounted to less than one gram, and the supreme court held that the weight of the untested samples could not be combined to bring the total to over one gram. *Jones*, 174 Ill. 2d at 430. In the present case, however, the State tested 23 packets with a combined weight of 5.2 grams. Thus, the tested material was more than five times the amount needed to support defendant's conviction.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GEIGER, P.J., and McLAREN, J., concur.