THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOEL NWOSU, Defendant-Appellant.

First District (3rd Division)   No. 1—94—3623

Opinion filed June 30, 1997.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Renee P. O'Neil, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

Following a bench trial, defendant Joel Nwosu was convicted of controlled substance trafficking and sentenced to a 24-year prison term. He appealed, contending that the cocaine found in his apartment was inadmissible because the search was based on an anticipa-

tory search warrant not then authorized by statute. He also argued the State did not prove that he knew cocaine was in the package delivered to him. We initially affirmed the cause in a published opinion, finding that the good-faith exception to the exclusionary rule applied to the search. *People v. Nwosu*, 284 Ill. App. 3d 538 (1996). Our analysis was based in part on the United States Supreme Court decision in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), which applied the good-faith exception to a search conducted in reasonable reliance upon a statute later declared unconstitutional. Subsequent to our decision, the Illinois Supreme Court departed from the analysis in *Krull* and refused to apply the good-faith exception to a search based on a statute later found to be unconstitutional. *People v. Krueger*, 175 Ill. 2d 60 (1996). Pursuant to its supervisory authority, the court then vacated our decision and remanded the cause to us for reconsideration in light of *Krueger*. We again affirm.

The State's evidence showed that on May 22, 1992, a United States customs inspector found cocaine in a package from Lagos, Nigeria. The package was addressed to defendant at an address in Chicago. The cocaine was packaged in four plastic bags hidden in the false bottom of a cloth suitcase containing clothing and carved wood artwork. It was later stipulated that the cocaine weighed 467.45 grams and was 73.2% pure.

Detective Andrew Abbott prepared a complaint for a search warrant containing the above information. The complaint stated that the package would be delivered to defendant's apartment and that the search warrant would be executed only if the package was accepted. A judge issued the search warrant at 11 a.m. on June 9, 1992.

United States Customs Agent Glenn Edin testified that he posed as a DHL delivery man and made a controlled delivery of the package to defendant at 1:50 p.m. on June 9, 1992. Edin said defendant seemed anxious when he signed for the package and asked why it took so long to have the package delivered. Defendant told Edin he had called DHL and put a "trace" on the package. Edin left the apartment, then called defendant 20 minutes later claiming that he had given him the wrong receipt. Defendant was arrested when he left his apartment to exchange receipts.

Agent Edin testified that he went into defendant's apartment to photograph the evidence. Although he was not the first officer to enter, other officers were to keep the evidence in place until it was photographed. Upon entering the bedroom, he saw a suitcase with a false bottom that had been ripped out and peeled back, exposing United States currency, documents and the packages of cocaine. He

took photographs of the suitcase and the apartment. Edin did not find equipment for using, packaging or weighing drugs, and defendant's fingerprints were not found on the packages of cocaine.

Detective Andrew Abbott testified he saw African design clothing and wood carvings thrown about the living room. On the bedroom floor he saw a suitcase with the bottom torn away. Abbott was shown People's exhibit No. 4, a photograph of the suitcase, and asked exactly how the suitcase appeared when he first saw it. Abbott stated, "It was lying on the floor with the top over exposing the entire suitcase and the false bottom was torn away from the bottom of the suitcase and it was lying in the suitcase opened like this revealing the clear plastic bags of white powder." He was then shown another photograph of the suitcase, People's exhibit No. 11, and asked if it accurately depicted the suitcase. He responded, "Not at first, no," and explained again that when he first observed the suitcase he could see the cocaine inside. A briefcase found in a closet contained $9,000 in United States currency. A photograph of the briefcase showed bundles of $20 and $10 bills.

Jerome Clemons, testifying for defendant, stated he was in the apartment when the package was delivered. He and defendant removed the clothing and artifacts from the suitcase, examined them for approximately 10 minutes, then placed them back inside. Defendant took the suitcase to his bedroom, where he remained for "like two seconds," before returning to the living room. At that time, defendant was called out of the apartment by the DHL delivery man. He returned a short time later accompanied by the police. Clemons did not see cocaine inside the suitcase and had never seen defendant with drugs.

Defendant testified he was born in Nigeria and has family there. He was a businessman who sold African clothing and artwork and was currently operating the business from his home. Defendant's sister periodically sent him clothing and artifacts from Nigeria, and he was expecting a shipment in June 1992. When the package did not arrive as expected, defendant called DHL and asked the company to put a "trace" on it. On June 9, 1992, a package containing a suitcase was delivered to his home. After he and Jerome Clemons examined the contents of the suitcase, defendant put it in his bedroom and immediately returned to the living room. He did not expect anyone to send him cocaine and did not see cocaine or anything else hidden in the suitcase.

In finding defendant guilty, the trial court questioned the credibility of defendant's testimony that he did not know anything was hidden in the suitcase, stating that the cocaine hidden inside weighed

approximately 16 pounds. The court also stated that $10 and $20 bills are "denominations which are commonly found in the drug community." Later, in denying defendant's motion for a new trial, the court stated that defense witness Jerome Clemons testified defendant was in his bedroom with the suitcase for "at least one minute." The court then specifically found that the officers who entered the bedroom found the suitcase with the "false bottom exposed and the drugs visible." The court found Agent Eden's testimony credible and said it did not believe defendant.

Defendant contends that the evidence found in his apartment was inadmissible. He maintains that it was recovered during a search conducted pursuant to an anticipatory search warrant and that such warrants were not authorized by the statute in effect at that time. As stated above, this issue is before us for the second time.

■ An anticipatory search warrant is based on probable cause that at some future time, but not presently, certain evidence of a crime will be located at a specified place. *People v. Martini*, 265 Ill. App. 3d 698, 703 (1994); 2 W. LaFave, Search & Seizure § 3.7(c), at 362 (3d ed. 1996). This court has held anticipatory search warrants constitutional. *Martini*, 265 Ill. App. 3d at 707.

In *People v. Ross*, 168 Ill. 2d 347 (1995), the Illinois Supreme Court held that, although constitutionally valid, anticipatory warrants were not authorized by the language of section 108—3 of the Code of Criminal Procedure of 1963. 725 ILCS 5/108—3 (West 1992). Section 108—3(a)(1) provided that "any judge may issue a search warrant for ***[a]ny instruments, articles or things which have been used in the commission of, or which may constitute evidence of, the offense in connection with which the warrant is issued." 725 ILCS 5/108—3(a)(1) (West 1992). The court found that the statute was ambiguous and could reasonably be construed to allow anticipatory warrants. However, relying on the committee comments to the statute, the court held that the legislature intended search warrants to issue only after a crime had been committed. *Ross*, 168 Ill. 2d at 352-53. The statute, since amended, effective August 18, 1995, now includes language similar to Rule 41(b) of the Federal Rules of Criminal Procedure (Fed. R. Crim. Proc. 41(b)), which authorizes anticipatory search warrants. 725 ILCS 5/108—3 (West Supp. 1995).

In his original brief before this court, defendant relied upon *Ross* to argue that the search warrant was void *ab initio* and the State was not entitled to use evidence recovered during the illegal search. The State responded that the officers who executed the search acted in good faith and asked that we apply the good-faith exception to the rule requiring exclusion of evidence obtained in an illegal search.

In *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), the Supreme Court held that exclusion of evidence is not required if the police officer acted in objectively reasonable reliance on a facially valid warrant that is later found invalid based on lack of probable cause. See also *People v. Stewart*, 104 Ill. 2d 463, 477 (1984) (adopting *Leon*); 725 ILCS 5/114—12(b)(1), (b)(2) (West 1992) (codifying *Leon*). The Court later extended the good-faith exception in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), holding that the fourth amendment did not require exclusion of evidence seized by a police officer who reasonably relied, in objective good faith, on a statute that authorized a warrantless administrative search although the statute was later found to be unconstitutional. Citing *Krull*, we applied the good-faith exception and found the cocaine admissible.

●2 Subsequent to our decision, the Illinois Supreme Court found that the Illinois Constitution continues to afford the protection abrogated by *Krull*. *People v. Krueger*, 175 Ill. 2d 60 (1996). The court held that application of the good-faith exception to a search pursuant to a warrant issued under a statute later found to be unconstitutional is incompatible with our state constitutional guarantee against unreasonable searches. *Krueger*, 175 Ill. 2d at 70-76. The question on remand is whether *Krueger* prohibits application of the good-faith exception in the cause before us. We hold that it does not.

Our supreme court based its decision in *Krueger* on its observation that the Illinois Constitution "has always been understood to bar evidence gathered under the authority of an unconstitutional statute." *Krueger*, 175 Ill. 2d at 74. The court concluded that applying the good-faith exception to a warrant issued pursuant to a statute later declared unconstitutional would "provide a grace period for unconstitutional search and seizure legislation, during which time our citizens' prized constitutional rights can be violated with impunity." *Krueger*, 175 Ill. 2d at 75. The court also commented that unconstitutional legislation affects large numbers of people and therefore poses a greater threat to liberty than a judicial officer's unreasonable authorization of a search in a particular case. *Krueger*, 175 Ill. 2d at 72-73.

▮ The case before us does not pose the threat to liberty addressed in *Krueger*. The statute in this case was not determined to be unconstitutional. It was instead found to be ambiguous—subject to "evenly plausible but divergent interpretations"—as to whether it allowed anticipatory warrants. *People v. Ross*, 168 Ill. 2d 347, 352 (1995). The issue of whether the legislature intended to permit or prohibit anticipatory warrants is ultimately irrelevant in the context of this

case because no constitutional right is implicated. Had the statute unambiguously allowed anticipatory warrants, we believe that our supreme court would have concurred with the federal court decisions and found the statute constitutional. See *United States v. Ricciardelli*, 998 F.2d 8, 11 (1st Cir. 1993); *United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir. 1993). For this reason, the citizens of Illinois were never in danger of being subjected to a grace period during which their constitutional rights could be violated with impunity.

In deciding whether officers acted in good faith, we see no difference between a facially valid warrant issued by a judge in reliance on his reading of a statute that is later found by a higher court to be "evenly plausible but divergent" from the higher court's reading, and a warrant where the trial court's reading of a statute is later approved by the higher court. Either way, the good faith of the officers is not a nullity, because the constitutionality of the statute is not in issue. The officers in this case executed a facially valid anticipatory search warrant issued by a judge in reliance on a statute that the supreme court found could be reasonably construed to allow anticipatory search warrants. The only Illinois case law on the date the warrant was issued upheld anticipatory warrants as constitutional. The facts of this case establish that the officers acted in good faith. The good-faith exception has been recently applied in a case virtually identical to ours. *People v. Carlson*, 287 Ill. App. 3d 700 (1997). In our view, *Krueger* does not require suppression of the evidence.

Defendant's remaining contention is that the State failed to prove · he knowingly possessed the cocaine found in the suitcase. He states that the officers' testimony that the suitcase was found open with the cocaine exposed was incredible, no other drug paraphernalia was found in the apartment, his fingerprints were not on the packages of cocaine, and he would not have asked DHL to trace the package if he had known it contained cocaine. Defendant also argues that the court remembered the evidence incorrectly and relied on improper factors in finding him guilty.

■ The relevant question in reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Nitz*, 143 Ill. 2d 82, 95-96 (1991). Determinations regarding the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence are reserved to the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991). The trier of fact is also given the function of resolving discrepancies or conflicts in the testimony. *People v. Harris*, 220 Ill. App. 3d 848, 863

(1991). It is not the function of this court to retry the defendant when considering a challenge to the sufficiency of the evidence. *People v. Boclair*, 129 Ill. 2d 458, 474 (1989).

■ To sustain a conviction for controlled substance trafficking, the State must prove that the defendant knowingly brought into this State a controlled substance for the purpose of delivery or with the intent to deliver. 720 ILCS 570/401.1 (West 1992). The element of knowledge is rarely susceptible of direct proof and may be established by evidence of acts, declarations or conduct of the defendant which support the inference that he knew of the existence of narcotics at the place they were found. *People v. Pintos*, 133 Ill. 2d 286, 292-93 (1989).

Here the trial court believed the testimony of the officers who stated they found the suitcase in defendant's bedroom with the false bottom torn open and the cocaine exposed. Defendant argues that a photograph that purportedly showed the false bottom intact rendered the officers' testimony incredible. Detective Abbott, when questioned about the photograph, testified that it did not accurately depict the suitcase as it appeared when he first observed it. Assessing the credibility of the witnesses is a function reserved to the trier of fact, who is in a much better position to do so than a court of review. We will not disturb the court's determination on this basis.

Defendant next argues that his fingerprints were not found on the packages of cocaine and no drug paraphernalia was found in his ·apartment. Again, this is a challenge to the sufficiency of the evidence. In light of the specific facts of this case, the absence of drug paraphernalia and fingerprints does not serve to create a reasonable doubt of defendant's guilt. Defendant also maintains that he would not have requested DHL to trace the package if he had known it contained an illegal substance. This is a risk defendant may have been willing to take.

Finally, defendant focuses on statements made by the trial court at the end of trial and after the hearing on the post-trial motion to argue that the court's findings were not supported by the evidence. These statements involve the weight of the suitcase as bearing on defendant's testimony he did not know anything was hidden inside, the court's incorrect recollection that Clemons testified defendant was in the bedroom for one minute rather than two seconds, and the court's statement that $10 and $20 bills are denominations favored by the drug community.

A reading of the trial court's findings shows that it based its determination of guilt primarily upon the testimony of the officers who delivered the package to defendant and returned 20 minutes later to

find the false bottom of the suitcase torn open, exposing the cocaine. The officers also found $9,000 in currency in a briefcase in the apartment. The court was not required to accept defendant's argument that the money could have come from cash sales of African clothing and artwork. A large amount of cash in close proximity to narcotics supports the inference that the drugs were possessed with intent to deliver. See *People v. Torres*, 200 Ill. App. 3d 253, 266 (1990). With respect to the court's statements, we find nothing improper in its consideration of the weight of the suitcase. The comment concerning the amount of time defendant was in his bedroom with the suitcase was made to show that, even accepting the defense testimony, defendant had the opportunity to discover the cocaine. We are not persuaded that the court's incorrect recollection of the exact amount of time Clemons said defendant was in his room had a bearing upon the conviction. The same is true of the court's comments concerning the denominations of currency commonly used in the drug community.

Accordingly, the judgment of the circuit court is affirmed. Pursuant to *People v. Nicholls*, 71 Ill. 2d 166 (1978), we grant the State's request for $100 in costs for defending this appeal and incorporate it as part of our judgment.

Affirmed.

THEIS and O'BRIEN, JJ., concur.