THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IRAIDA G. SANCHEZ, Defendant-Appellant.

Third District No. 3—96—0761

Opinion filed October 10, 1997.

764

Benjamin S. Waxman (argued) and Frederick S. Robbins, both of Robbins, Tunkey, Ross, Amsel & Raben, of Miami, Florida, for appellant.

Ted J. Hamer, State's Attorney, of Cambridge (John X. Breslin and Gary

F. Gnidovec (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Following a jury trial, the defendant, Iraida Sanchez, was found guilty of controlled substance trafficking (720 ILCS 570/401.1 (West 1996)). She was sentenced to a term of 60 years' imprisonment.

On appeal, the defendant argues: (1) the trial court erred when it denied her motion to suppress the evidence because no valid consent was given for the search and because she was illegally detained for over 40 minutes; and (2) the evidence was not sufficient to prove her guilty beyond a reasonable doubt of controlled substance trafficking. Following our careful review of the record, we affirm.

## FACTS

At the suppression hearing, Floyd Blanks, an Illinois state trooper, testified that he was on patrol at 6:49 a.m. on November 6, 1995. He saw a motor home traveling 60 miles per hour on Interstate 80 near Kewanee. The posted speed limit for large vehicles, including motor homes, was 55 miles per hour. Blanks stopped the motor home and asked the driver for his driver's license. The driver gave him a Florida driver's license which identified him as Elkin Andres Montoya. Blanks then asked the driver to come to the patrol car and bring the vehicle's registration. The driver went back to the trooper's car and handed Blanks the rental agreement for the motor home. The agreement listed the defendant as the renter of the motor home and stated that Elkin Montoya was another authorized driver.

Blanks asked the driver about his trip in the motor home. The driver told him that he was coming from Florida and was going to Chicago to visit his girlfriend. Blanks then asked the driver how many people were present in the motor home. According to Blanks, the driver answered, "his friend, his friend's wife, his girlfriend and two other friends." Blanks said the driver spoke in somewhat broken English with a heavy accent. However, Blanks testified that he did not have any difficulty understanding what the driver said. Blanks then requested the canine unit. Blanks said his suspicions were aroused when the driver said he was going to visit his girlfriend and then mentioned that his girlfriend was located in the motor home. Also, the trooper observed a child's bicycle strapped to the back of the motor home, but the driver said only adults were present in the motorhome.

Blanks testified that the driver asked him if it was that cold all over Illinois. Blanks told him "yes," and the trooper then completed a written warning. Blanks returned the driver's documents and told

him that the citation was just a warning. The trooper said the warning ticket would not cost the driver anything. The driver responded with "thank you" and started to leave. Blanks said to hold on because he had to give the driver a copy of the warning. Blanks testified that he then asked the driver for consent to search the vehicle for alcohol, weapons and drugs. The driver looked at him with a surprised expression. Blanks asked one more time. This time, the driver said "yeah." Blanks did not recall the driver using any body language when he gave the response. Blanks then told the driver that he could wait in his vehicle if he wished and said that a canine unit was on the way. The driver said "okay" and went back to the motor home. About 15 minutes later, the driver came back to Blanks' car and asked the trooper if there was a problem. Blanks told him there was no problem. The trooper said that the canine unit had been delayed but would be there shortly. The driver again walked back to the motor home.

Officer Anna Segura arrived in the canine unit at approximately 7:38 a.m. She was delayed because she had to respond to another request for assistance. Prior to Segura's arrival, two more squad cars arrived to assist. Blanks testified that it was about 40 minutes from the time the driver consented to the search of the vehicle to the time the canine unit arrived.

Segura and Blanks walked up to the passenger side of the motor home, and the driver opened the door. Blanks testified that he advised the occupants of the motor home that the driver had given a consent to search the vehicle. Blanks asked if there was any problem with a search. No one voiced an objection, and all six of the individuals in the vehicle left the motor home. The people were told to sit in the squad cars so they could keep warm. Segura took her dog into the motor home. Several minutes later, she came out and said that she found what appeared to be cocaine. Consequently, the six occupants of the motor home were placed under arrest. During a subsequent search, the officers discovered 13 large black garbage bags filled with bricks of white powder. The powder was tested and found to be over 1,000 pounds of cocaine with a street value of approximately $63 million.

The defendant testified that the driver was her boyfriend. She stated that she was sleeping in the motor home. She said she did not hear Blanks say he had a consent to search the vehicle or ask if there was any problem. She testified that she speaks English well. However, she testified that she never heard the driver speak English. Armando Manrique, one of the occupants of the motor home, testified that the driver cannot speak or understand English. Manrique said

that he tried to coach the driver how to ask if they could leave during the time they were waiting. The driver forgot what he was supposed to say and just asked if there was a problem.

The driver testified through an interpreter that he was 22 years old. He was born in Columbia and had been in the United States for 11 or 12 months. He said that he did not speak or understand English. He admitted taking some English classes in Columbia and Miami. However, he said that he could only understand a few small words and did not understand Blanks when he asked if he could search the motor home. He testified that he used the word "ya" when "he was indicating that I could leave already, if I can go. I'm free to go." Surprisingly, the driver testified that if he *had* understood Blanks' question, he would have given permission for the search. The defendant testified that there would have been "no problem" with a search if the trooper had asked.

Rosa Knapp testified that she is a translator and is fluent in both English and Spanish. She stated that the Spanish words for yes are "si" or "ya." However, she stated that "ya" is a slang expression which can also mean stop or no. She said that a person's body language, such as holding a hand up, would help tell the meaning.

Segura and Richard Shannahan, an investigation commander, testified that they spoke to the driver following his arrest. Both said they were able to communicate with the driver in English.

After hearing this testimony, the trial court denied the defendant's motion to suppress the evidence. The judge found the "search of the vehicle was a valid consent search under Illinois law."

At the defendant's jury trial, Blanks testified that numerous garbage bags filled with cocaine were found in almost all of the storage bins in the motor home. Other garbage bags filled with cocaine were located surrounding the bed the defendant had been sleeping on. These garbage bags were partially covered with luggage and clothing. Photographs were introduced into evidence which showed the garbage bags were found all over the motor home. Blanks testified that a pager and cellular telephone were recovered from the defendant.

Both Blanks and Segura testified that they spoke with the defendant following her arrest. She admitted that she found out about the cocaine the night before. Up until that point, she thought the garbage bags contained Christmas presents. Shannahan testified as an expert in narcotics. He said that it was typical for several people to be involved in a large shipment of cocaine. He said that many people are involved to protect the drugs and also because large vehicles are necessary for transportation. Shannahan said it was commonplace for drug traffickers to carry pagers and cellular telephones.

The driver testified that he was the only person responsible for hiding the cocaine in the motor home. He said that he was the only person who drove the motor home and he had sole possession of the vehicle when the cocaine was loaded in California. The driver said he was to deliver the cocaine to Chicago. He did not discuss the drugs with the defendant, and she did not know the location of the cocaine in the motor home.

The defendant testified that she rented the motor home for the sole purpose of taking a vacation. She said that she did not know about the cocaine located in the motor home. She also said she did not see any garbage bags. The defendant stated that she was ill and spent most of the trip sleeping on a bed in the passenger compartment of the vehicle. She denied telling Blanks that she was aware of the cocaine the night before the stop. Testimony was presented that the defendant had steady employment in Miami and a good reputation for honesty.

After the jury found the defendant guilty, the trial court imposed a sentence of 60 years' imprisonment. This timely appeal followed.

## ANALYSIS

### I. SUPPRESSION OF EVIDENCE

The defendant argues that the trial court should have granted her motion to suppress because: (1) the driver's consent was not valid; and (2) the detention of the defendant for over 40 minutes prior to the search was not reasonable. After carefully considering the defendant's arguments, we disagree.

### A. STANDARD OF REVIEW

■ The trial court's ultimate determination regarding the reasonableness of a warrantless search is subject to *de novo* review. *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1662 (1996). However, the trial court's determination regarding factual matters, including the reasonable inferences to be drawn from the witnesses' testimony, is entitled to deference by a reviewing court. *People v. Moore*, 286 Ill. App. 3d 649, 652, 676 N.E.2d 700, 703 (1997); see also *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920-21, 116 S. Ct. at 1662-63.

Here, in this case, the facts surrounding the consent and detention issues were sharply disputed during the hearing on the motion to suppress evidence. The trial judge resolved the factual disputes and concluded that the search was a valid consent search. A reviewing court will not reverse a trial court's factual findings unless they are manifestly erroneous. *Moore*, 286 Ill. App. 3d at 652, 676 N.E.2d at 703.

## B. CONSENT TO SEARCH

The defendant argues that the driver did not freely and voluntarily consent to the search of the motor home. We disagree with this contention.

■ A search that is conducted pursuant to consent is one of the specifically established exceptions to the fourth amendment requirements of both a warrant and probable cause. *People v. Cardenas*, 237 Ill. App. 3d 584, 587, 604 N.E.2d 953, 955 (1992). A driver of a vehicle has authority to consent to a search of the vehicle because he has immediate possession and control of the entire vehicle. *United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir. 1993); *People v. James*, 163 Ill. 2d 302, 314-15, 645 N.E.2d 195, 201-02 (1994). This is true even when the owner of the vehicle is present and does not object to the search. *People v. Mendoza*, 234 Ill. App. 3d 826, 835, 599 N.E.2d 1375, 1381 (1992); see also *Eldridge*, 984 F.2d at 948; but *cf. Johnson v. State*, 905 P.2d 818, 820 (Okla. Crim. App. 1995).

A consent to search is valid under the fourth amendment if it is voluntary. *Ohio v. Robinette*, 519 U.S. 33, 40, 136 L. Ed. 2d 347, 355, 117 S. Ct. 417, 422 (1996); *Cardenas*, 237 Ill. App. 3d at 587, 604 N.E.2d at 955. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Robinette*, 519 U.S. at 40, 136 L. Ed. 2d at 355, 117 S. Ct. at 422; *People v. Perez*, 288 Ill. App. 3d 1037, 1046, 681 N.E.2d 173, 179 (1997). Consent is not voluntary where it is the result of official coercion, intimidation or deception. *Perez*, 288 Ill. App. 3d at 1046, 681 N.E.2d at 179.

■ Here, in the instant case, Blanks testified that the driver followed his instructions, in English, to produce his license and to come back to the squad car with the vehicle's registration. Blanks, Segura and Shannahan all testified that they were able to maintain a conversation with the driver in English. According to Blanks, the driver said "yeah" the second time Blanks asked for consent to search the vehicle for alcohol, weapons or drugs. Although the driver, the defendant and Manrique testified that the driver could not understand or speak English, the trial court, in weighing the evidence, is not required to accept the defense version when there is contrary evidence presented by the State. See *People v. Locascio*, 106 Ill. 2d 529, 537, 478 N.E.2d 1358, 1361 (1985).

In addition, the testimony of the translator did not establish that the driver meant "no" when he answered Blanks' question. The translator testified that "ya" means "yes" in Spanish. She also stated that it can mean "stop or no" when accompanied by appropriate body language. However, we note that the driver did not state that he meant to say "no." Nor did the driver testify that he used any

body language when responding to Blanks' question. Accordingly, based on the record, the trial court could properly find from the conflicting evidence that the driver understood Blanks' question and consented to the search.

Moreover, the evidence fails to support the defendant's contention that any consent was induced by a coercive situation. The record shows that Blanks was the only police officer present when the driver consented to the search. We note that the driver described his conversation with Blanks as "calm." The other officers did not arrive until after the driver had already consented to the search. *Cf. Cardenas*, 237 Ill. App. 3d at 588, 604 N.E.2d at 956 (consent result of coercive situation where the defendant's vehicle was surrounded by three state troopers).

For the reasons stated, we find the record supports the trial court's determination that the driver's consent to search was valid and not coerced.

## C. DETENTION

The defendant also claims that the evidence should have been suppressed because she was illegally detained for over 40 minutes while Blanks was waiting for the canine unit to arrive. Again, we disagree with the defendant's argument.

The defendant relies on cases which state that a detention must end once the purpose of the stop has been accomplished. See, *e.g.*, *People v. Arteaga*, 274 Ill. App. 3d 781, 783, 655 N.E.2d 290, 291-92 (1995); *People v. Koutsakis*, 272 Ill. App. 3d 159, 163, 649 N.E.2d 605, 608 (1995). However, these cases are not directly on point. Here, in this case, consent to a search of the vehicle had been given by the driver, and Blanks was merely waiting for the arrival of the canine unit to begin the search.

A consensual search is reasonable only if it is kept within the scope of the consent. *Mendoza*, 234 Ill. App. 3d at 836, 599 N.E.2d at 1382. "A consent to search which is unlimited as to time and number of searches must be judged under a rule of reason, that is, whether the search is reasonable." *Mendoza*, 234 Ill. App. 3d at 836, 599 N.E.2d at 1382; see also 3 W. LaFave, *Search & Seizure*, § 8.1(c), at 629 (3d ed. 1996). What is reasonable is a factual determination to be made by the trial court after considering all the circumstances under which the consent was executed. *Mendoza*, 234 Ill. App. 3d at 836, 599 N.E.2d at 1382.

We agree with the trial court that the 40-minute delay in this case was reasonable. There was a rational explanation for the delay: the canine unit was held up while it responded to another request for

assistance. Furthermore, Blanks informed the driver on two occasions that he was waiting for the canine unit so he could begin the search. The record reveals that neither the driver nor any of the occupants of the motor home objected to the delay. See *Perez*, 288 Ill. App. 3d at 1045, 681 N.E.2d at 179; *People v. Easley*, 288 Ill. App. 3d 487, 492, 680 N.E.2d 776, 780 (1997). Accordingly, we find no error.

## II. SUFFICIENCY OF THE EVIDENCE

■ The defendant finally argues that she was not proved guilty beyond a reasonable doubt. When the sufficiency of the evidence is challenged in a criminal case, the relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). Determinations regarding the credibility of the witnesses, the weight to be given to their testimony and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226, 568 N.E.2d 837, 845 (1991).

■ In order to convict a defendant of the offense of controlled substance trafficking, the State must prove the defendant: (1) knowingly brought or caused to be brought into this state; (2) for the purpose of delivery; (3) or with the intent to deliver; (4) a controlled substance. *People v. Frieberg*, 147 Ill. 2d 326, 346, 589 N.E.2d 508, 517 (1992); *People v. Amaya*, 255 Ill. App. 3d 967, 970, 627 N.E.2d 753, 756 (1994). The element of knowledge is rarely susceptible of direct proof. *People v. Nwosu*, 289 Ill. App. 3d 487, 494, 683 N.E.2d 148, 153 (1997). Knowledge may be established by evidence of acts, declarations or conduct that supports the inference that the defendant knew of the existence and location of the controlled substance. *Nwosu*, 289 Ill. App. 3d at 494, 683 N.E.2d at 153.

■ Based upon the *Collins* standard, we conclude that the evidence presented was sufficient to prove the elements of the offense beyond a reasonable doubt. The record shows that the state troopers found 13 large black garbage bags filled with bricks of cocaine which were located throughout the motor home. The defendant rented the motor home in Florida. The driver testified that the cocaine was loaded in the motor home in California and was to be delivered to Chicago. Blanks and Segura testified that the defendant told them that she became aware of the cocaine the night before the seizure of the drugs. Clearly, the jury could find the defendant guilty based upon this record even though the defendant and the driver testified at trial that she did not know about the cocaine.

For the reasons stated, the judgment of the circuit court of Henry County is affirmed.

Affirmed.

LYTTON, P.J., and HOLDRIDGE, J., concur.