First District

December 17, 2001

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the ) Circuit Court of

) Cook County.

Plaintiff-Appellee, )

)

)

)

) No. 96 CR 5302

)

)

)

VICTOR CHAVEZ, ) The Honorable

) Kenneth Wadas,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE COHEN delivered the opinion of the court:

On April 28, 1998, following a jury trial, defendant Victor Chavez was convicted in the circuit court of Cook County of possessing 2,002 grams of a controlled substance (cocaine) with intent to deliver and sentenced to 17 years' imprisonment. 720 ILCS 570/401(a)(2)(D)(West 1998).  Defendant raises five main issues on appeal. Defendant first challenges the sufficiency of the evidence supporting his conviction.  Defendant next alleges prosecutorial misconduct in the form of mischaracterization of evidence, improper argument and inflammatory comments.  Defendant also alleges the circuit court erred in denying his motion to quash the arrest and suppress evidence.  Defendant further alleges the circuit court erred in allowing expert testimony on the street value of the cocaine.  Finally, defendant alleges the circuit court erred in denying his motion to disclose the identity of the State's confidential informant.  

We hold that: (1) the evidence was sufficient to support defendant's conviction; (2) any misconduct on the part of the prosecution was 
de minimus
 and harmless; and (3) the circuit court did not err in its other rulings.  We affirm.

BACKGROUND

On January 25, 1996, the Chicago police department received information from a known confidential informant (CI) that a "Latino male" named Victor, who weighed 180 pounds and was 5 feet 10 inches tall, would drive a Ford automobile to a tavern on 30th Street and Kostner Avenue around 8 p.m. that same evening to pick up two kilograms of cocaine.  The police officer who received the information from the CI knew that his team had received information from the same CI on nine prior occasions, eight of which resulted in the seizure of contraband.  The police department maintained a record, or "package," of all prior dealings with each of its CIs, containing information about the informant's identity and degree of involvement in each case.

Acting on the information obtained from the CI, two teams of police officers began surveillance of the tavern around 7:30 p.m.  that same evening.  At approximately 7:50 p.m., the first team of police officers observed defendant park a Ford Taurus at 2958 Kostner, exit the car, cross the street and enter the tavern.  The officers did not enter the tavern nor could they observe any activity inside the tavern.  Approximately five minutes later, defendant exited the tavern carrying a brown envelope wrapped in the shape of a brick under his left arm.  The officers observed the defendant return to the Ford Taurus and place the package in the backseat on the passenger side.  The first team of officers radioed to the second team of officers, parked on 31st and Kostner, that the defendant was leaving the tavern and they needed assistance from the second team in stopping defendant.  

Defendant drove one block south on Kostner before the second team of officers stopped defendant's car by blocking his path with their police cruiser.  The first team of officers, parked on 30th and Kostner, then drove their cruiser to block defendant's car from behind.  Officer Ramirez approached the driver's side window from the second team's cruiser and asked defendant in Spanish for identification.  Defendant responded that his name was Victor Chavez and produced a driver's license.  After Ramirez told Officer Alfred Pappalito, who had approached the car from the rear on the passenger side, that the driver's name was Victor, Pappalito opened the rear passenger side door and removed the brown envelope package.  Pappalito attempted to open the tightly wrapped package with his hands but failed.  When Pappalito opened the package with a knife from his police cruiser, he found a white powdery substance inside the package.  The officers placed defendant under arrest, advised him of his rights and transported him and the package to police headquarters on 3540 South Normal.  

The package and the white powdery substance were inventoried at police headquarters and sent to the Illinois State Police crime lab for testing.  The lab determined that the package contained two separately wrapped kilograms of cocaine with a total combined weight of 2,002 grams.  The first kilogram of cocaine had a purity of 87% and the second kilogram had a purity of 86%.  

Following a jury trial, defendant was convicted of possessing a controlled substance with intent to deliver and sentenced to 17 years' imprisonment.  720 ILCS 570/401(a)

(2)(D)(West 1998).  This appeal followed.

ANALYSIS

I. Sufficiency of the Evidence

The standard of review of a challenge to the sufficiency of the evidence supporting a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any reasonable fact finder could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Schmalz
, 194 Ill. 2d 75, 80 (2000).  To upset a criminal conviction, defendant "must show that the evidence [educed at trial] is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt."  
People v. Jones
, 295 Ill. App. 3d 444, 452 (1998).  

The charge of possession of a controlled substance with intent to deliver consists of three elements: (1) the defendant had knowledge of the presence of the controlled substance; (2) the controlled substance was within the immediate control or possession of the defendant; and (3) the defendant had intent to deliver the controlled substance.  
Jones
, 295 Ill. App. 3d at 452.  These elements can be proved by circumstantial evidence.  
People v. Clemons
, 277 Ill. App. 3d 911, 923 (1996).  The element of knowledge is, by nature, difficult to establish by direct evidence.  
People v. Butler
, 304 Ill. App. 3d 750, 755 (1999).  Thus, knowledge may be established by evidence of acts, declarations or conduct of the defendant from which it may be inferred that the defendant knew of the existence of the narcotics.  
People v. Nwosu
, 289 Ill. App. 3d 487, 494 (1997), 
appeal denied
, 183 Ill. 2d 587 (1999)
; 
Butler
, 304 Ill. App. 3d at 755; 
People v. Rivas
, 302 Ill. App. 3d 421, 430 (1998); 
People v. Sanchez
, 292 Ill. App. 3d 763, 771 (1997); 
Clemons
, 277 Ill. App. 3d at 923.

Direct proof of intent to deliver narcotics is equally as  elusive to prove as direct proof of knowledge; thus, intent to deliver is usually proved through circumstantial evidence.  
People v. Robinson
, 167 Ill. 2d 397, 408 (1995).  Our supreme court has outlined seven relevant factors that support an inference of an intent to deliver: (1) whether the quantity of controlled substance possessed is too large to be reasonably viewed as being for personal consumption; (2) the degree of purity of the controlled substance; (3) the possession of any weapons, (4) possession of large amounts of cash; (5) possession of police scanners, beepers, or cellular phones; (6) possession of drug paraphernalia; and (7) the manner in which the controlled substance is packaged.  
Robinson
, 167 Ill. 2d at 408.  We are mindful of protecting the interests of justice and examine the propriety of inferring intent to deliver on a case-by-case basis.  When deciding whether to uphold a conviction, we note that as the quantity of controlled substance in the defendant's possession increases, our need for additional circumstantial evidence of intent to deliver decreases.  
Robinson
, 167 Ill. 2d at 412-13.

Defendant concedes in his reply brief that "the core facts are not largely disputed; the fact of physical possession [is] not in issue."  As possession of the cocaine is not disputed, we focus our analysis only on whether defendant had knowledge of the presence of the cocaine and whether he had the intent to deliver the cocaine.

Defendant argues that no evidence was presented at trial to support an inference that he knew the tightly wrapped package contained cocaine.  Defendant analogizes his case to three narcotics cases in which convictions were reversed because the prosecution failed to prove the element of knowledge.  

In two of the cases defendant cites, the narcotics were contained in packages delivered to the accused through the established channels of mail delivery.  
People v. Ackerman
, 2 Ill. App. 3d 903 (1971); 
People v. Hodogbey
, 306 Ill. App. 3d 555 (1999)
.
  In 
Ackerman
, the court stated that "[a]ll the evidence shows is that defendant received a package in the course of normal mail delivery and placed the package under his arm for about five seconds." 
Ackerman
, 2 Ill. App. 3d at 905-06.  In 
Hodogbey
, the court stated the evidence proved only that after the accused accepted a package delivery addressed to him, he did not open or hide the package after receipt, and when approached by the officers, he did not flee or resist them.  
Hodogbey
, 306 Ill. App. 3d at 561.  The facts presented in both
 
Ackerman
 and 
Hodogbey
 were insufficient to support an inference of knowledge that the respective packages contained narcotics. 
Ackerman
, 2 Ill. App. 3d at 906; 
Hodogbey
, 306 Ill. App. 3d at 560.  

Defendant attempts to convince this court that driving to a tavern located on 31st and Kostner to obtain a tightly wrapped brown paper package on Thursday, January 25, 1996, at 7:50 p.m. is analogous to receiving an addressed package delivered through normal mail delivery channels during regularly accepted business hours (as in 
Hodogbey
 and 
Ackerman
).  We are not persuaded.  The record is devoid of any indication that the package defendant obtained at the tavern was received as part of a normal mail delivery.

Defendant also attempts to draw an analogy between his case and 
People v. Binns
, 27 Ill. App. 3d 978 (1975), in which the court reversed a conviction for possession of marijuana because the State failed to prove that Binns knew the sealed envelopes found in her apartment contained marijuana.  In 
Binns
, the court heard testimony from a neighbor's 15-year-old son who stated that he had planted the envelopes and called the police to Binns' home as revenge for informing the teenager's mother of his theft from Binns' home.  27 Ill. App. 3d at 980.  Once again, defendant's analogy fails.

"[T]he mere presence of illegal drugs on premises which are under the control of the defendant gives rise to an inference of knowledge and possession sufficient to sustain a conviction absent other factors which might create a reasonable doubt as to the defendant's guilt."  
People v. Smith
, 191 Ill. 2d 408, 413 (2000), citing 
People v. Nettles
, 23 Ill. 2d 306, 308-09 (1961), 
cert. denied
, 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939 (1962).  Defendant's reliance on 
Binns
 is misplaced.  The 
Binns
 court had credible and irrefutable testimony from a vengeful teenager that he had placed the marijuana in Binns' home and called the police. 
Binns
, 27 Ill. App. 3d at 980.  The teenager’s testimony was sufficient to refute the inference that Binns knew the envelopes contained marijuana.  Here, there is nothing in the record analogous to the testimony in 
Binns
 to refute the inference of defendant's knowledge from his undisputed and exclusive control of the cocaine bricks in the car. 

When drugs are found in a car, it is control of the vehicle rather than ownership of the vehicle which is pertinent to proof of control of the area in which drugs are found.  
People v. Whalen
, 145 Ill. App. 3d 125, 130-31 (1986).  Defendant's undisputed control of the car, as he drove away from the tavern, gives rise to an inference of defendant's knowledge of the cocaine sufficient to sustain his conviction.  There are no other facts in the record which could create a reasonable doubt as to defendant's guilt. 
Smith
, 191 Ill. 2d at 413.  Accordingly, we find that the jury was entitled to infer that defendant knew the tightly bound, two kilogram, brick-like package in his possession contained cocaine.  

We next turn our review to whether defendant intended to deliver the cocaine.  Our supreme court has stated that "the quantity of controlled substance alone can be sufficient evidence to prove an intent to deliver beyond a reasonable doubt" "only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption."  
Robinson
, 167 Ill. 2d at 410-11.  Defendant stipulated at trial that the package contained 2,002 grams of cocaine which ranged in purity between 86% and 87%.  At trial, Officer Montgomery of the Chicago police department testified that in 1996 a typical user would purchase two-tenths of a gram of powder cocaine with a purity level of between 12% to 15% for personal use.  Officer Montgomery also testified that large amounts of cocaine are brought into Chicago in a brick-like form weighing approximately 1,000 grams each.  The manner in which the defendant's cocaine was packaged fits the description of drug-trafficking practices recounted by veteran narcotics Officer Montgomery.   Given the large amount of cocaine involved, our need for additional circumstantial evidence of intent to deliver abates.  
Robinson
, 167 Ill. 2d at 412-13.  Considering the gross weight of powder cocaine taken from defendant in addition to the cocaine's 86% to 87% purity, as well as the cocaine's packaging, we require no further circumstantial evidence of intent to deliver.  We are certain that the two kilogram bricks of cocaine were not for defendant's personal use but for delivery.  Accordingly, we find that the jury was entitled to infer that defendant intended to deliver the cocaine bricks.   

For the reasons stated above, we find that when viewing the evidence in the light most favorable to the prosecution, any reasonable fact finder could have found the essential elements of the crime beyond a reasonable doubt.  
Schmalz
, 194 Ill. 2d at 80.  Defendant's challenge to the sufficiency of the evidence supporting his conviction fails.

II. Prosecutorial Misconduct

This court will not reverse a trial court's determination concerning the propriety of a prosecutor's closing remarks absent an abuse of discretion.  
People v. Hudson
, 157 Ill. 2d 401, 441 (1993).  It is improper for a prosecutor to misstate the evidence or argue facts not in evidence.  
People v. Albanese
, 104 Ill. 2d 504, 519 (1984).  However, our supreme court has stated that "'[a]s a general rule, reversal and remandment are unnecessary where the trial court has sustained a defense objection, thereby curing the potential for improper influence from the comment, especially where the jury is instructed that closing argument of the attorneys should not be considered as evidence in the case."  
People v. Emerson
, 189 Ill. 2d 436, 488 (2000), quoting 
People v. Enis
, 163 Ill. 2d 367, 407 (1994).  "Improper remarks will not merit reversal unless they result in substantial prejudice to the defendant, considering the context of the language used, its relationship to the evidence, and its effect on the defendant's rights to a fair and impartial trial. [Citations.]" 
People v. Smith
, 141 Ill. 2d 40, 60-61 (1990).  

While prosecutors are afforded wide latitude in closing argument and may argue reasonable inferences from the facts in evidence (
People v. Williams
, 192 Ill. 2d 548, 573 (2000)), "it is improper for the prosecutor to do or say anything in argument the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant, without throwing any light on the question for decision" (
Smith
, 141 Ill. 2d at 60). It is incumbent upon the prosecution under general ethical principles to "'refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.'"  
People v. Martin
, 29 Ill. App. 3d 825, 829. (1975), quoting 1 ABA Standards for Criminal Justice §3-5.8.

Defendant alleges four instances of prosecutorial misconduct which he contends entitle him to reversal of his conviction.  Defendant first claims the prosecution misrepresented evidence in closing argument when the prosecution characterized the defendant as driving "an unregistered car to a tavern."  The court overruled the defense objection to the prosecutor's comment.  After reviewing the entire record, the only testimony at trial on the subject of the car registration showed that the car was not registered to defendant.  We agree with defendant that the prosecution misrepresented evidence in closing argument.  Driving an unregistered car is a violation of section 3-701 of the Illinois Vehicle Code (625 ILCS 5/3-701 (West 2000)) and cannot reasonably be confused with driving a car not registered to the driver, which is not a violation of the Illinois Vehicle Code.   While the prosecution erred in misrepresenting evidence to the jury, this misrepresentation does not rise to the level of reversible error.  The prosecutor's error was harmless because in its absence, the defendant would still not have been entitled to prevail.  
People v. Fomond
, 273 Ill. App. 3d 1053, 1064 (1995).     Defendant next claims that the prosecution inflamed the prejudice of the jury by discussing the need to control the drug trade and by branding defendant as a mid-level drug dealer in closing argument.  The prosecution began its closing argument by stating "Welcome to the war on drugs" and argued the social evil of the drug trade in Chicago.  Both of defense counsel's objections to the "war on drugs" line of argument were sustained and the court instructed the jury to only consider the evidence presented at trial.  The circuit court's sustainment of the defense objections, as well as the curative jury instruction, vitiated any potential prejudicial effect of the prosecution's comments.  
Emerson
, 189 Ill. 2d at 487-88.  As to the prosecution's branding defendant as a mid-level drug dealer, we must examine each comment "considering the context of the language used, its relationship to the evidence, and its effect on the defendant's rights to a fair and impartial trial."  
Smith
, 141 Ill. 2d at 60.  We find the prosecutor's comments that defendant was a "smart drug dealer," that he dealt drugs for a living, and that drug dealers like defendant are "hard to get" and "a level up," each constituted a reasonable inference based on the evidence in the record.  Therefore, the prosecutor's comments were proper argument.  
Williams
, 192 Ill. 2d at 572.  

Defendant next claims the prosecution improperly argued the  police acted on a confidential informant's tip that was barred  from trial through a defense motion 
in limine.  
"A police officer may recount the steps taken in the investigation of a crime, and may describe the events leading up to arrest, where such testimony is necessary and important to explain fully the State's case to the trier of fact."  
People v. Patterson
, 282 Ill. App. 3d 219, 229 (1996).  So long as such testimony is not offered for the truth of the matter asserted, the officer may testify about his conversation with other persons "even where the testimony suggests that a nontestifying witness implicated defendant."  
Patterson
, 282 Ill. App. 3d at 229-30.  

During defendant's trial, one officer testified that he had  received some information pursuant to another investigation and that he had "responded to that information" by taking other officers "to another location in the city for the purpose of setting up another surveillance *** where we thought the transaction was going to take place."  The officer did not testify about the substance of the conversation or that he received the information from a confidential informant.  The trial transcript does not contain a single comment regarding the existence of a confidential informant or the informant's tip regarding defendant.  However, the prosecutor did argue the substance of the tip from the confidential informant in closing argument.  The prosecutor's statement that the police "knew what the defendant was up to that evening" was improper because there was no testimony identifying the defendant as the subject of surveillance or that the police had information about the defendant.  Despite the prosecutor's comment, which breached the court's suppression order, we cannot say -- in light of the overwhelming evidence against defendant -- that the defendant would have been entitled to prevail at trial absent the prosecutor's error.  
Fomond
, 273 Ill. App. 3d at 1064.  Therefore, the prosecutor's error in closing argument was harmless.  

Defendant further argues that the prosecution improperly drew attention to the fact that defendant did not testify and then called the defense strategy an insult to the prosecutor, the criminal justice system and the jury.  The test to determine whether a defendant's right to remain silent has been violated is whether the prosecutor's remarks were intended or calculated to direct the jury's attention to his silence. 
People v. Franklin
, 135 Ill. 2d 78, 101 (1990).  The prosecutor stated in closing argument: 

"Today, this defendant was caught red-handed, the only thing he can [do is] come to you today and say, I don't know what was in the package.  That is insulting to me and that is insulting to our criminal justice system, and that should be insulting to you that he can sit here and claim that."  

The court overruled defense counsel's objection to this comment.  

In his brief, defendant cites to other comments in the prosecutor's closing argument; however, we will address only this  comment because "[t]he defendant's failure to object to the remaining comments resulted in a waiver of this issue through procedural default."  
Franklin
, 135 Ill. 2d at 100.  

After reviewing the record, we find that the prosecutor's comment was not intended or calculated to draw attention to defendant's silence but, rather, was a paraphrasing of defendant's lack-of-knowledge defense.  Defendant's supposition that the prosecutor's comment impermissibly shifted the burden of proof to the defendant is also without merit.  The circuit court gave jury instructions that properly explained the burden of proof.  While the prosecutor's comment that the defense strategy was insulting served no purpose other than to arouse the prejudice of the jury, we cannot conclude that this single comment resulted in substantial prejudice to the defendant.  Thus, the comment constitutes harmless error.  
Fomond
, 273 Ill. App. 3d at 1064.  

Finally, defendant argues that the cumulative effect of each error denied him a fair, orderly, and impartial trial as guaranteed by the federal and state constitutions.  
People v. Bull
, 185 Ill. 2d 179, 214 (1998).  "To determine whether defendant's right to a fair trial has been compromised, we employ the same test that this court uses whenever it applies the second prong of the plain error test.  134 Ill. 2d R. 615(a).  We ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair."  
People v. Blue
, 189 Ill. 2d 99, 138 (2000).  In defendant's case, the cumulative effect of the prosecutor's errors did not render defendant's trial fundamentally unfair.   After a careful review of the record, we cannot say the prosecutor's errors at trial either were "of such gravity that [they] threaten[ed] the very integrity of the judicial process" (
Blue
, 189 Ill. 2d at 138), or constituted "a pervasive pattern of unfair prejudice to defendant's case" 
(
Blue
, 189 Ill. 2d at 139).
  We conclude that defendant's argument is without merit. 

III. Motion to Quash Arrest and Suppress Evidence

A trial court's ruling on a motion to suppress evidence will not be disturbed unless that ruling is manifestly erroneous.  
People v. Miller
, 173 Ill. 2d 167, 181 (1996).  In denying defendant's motion, the circuit court stated that the information received from the confidential informant did not constitute probable cause but that the police had sufficient information to make a 
Terry
 stop to investigate whether a crime had been committed or was in the process of being committed.  
Terry v. Ohio
, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968).   

Defendant argues that he was "arrested when the police stopped [his car] *** and surrounded [his car] on foot." Defendant argues the circuit court wrongfully denied his motion to quash arrest and suppress evidence because the police had insufficient information to support a finding of probable cause to justify the claimed arrest.  Defendant bases his effective arrest argument on the premise that the officers used force consistent with an arrest and not a 
Terry
 
stop.  The force that defendant argues is inconsistent with a 
Terry
 stop was the blocking of defendant's car with the police cruisers.  Defendant's argument is not persuasive.  An "investigatory stop is not transformed into an arrest by the officers using force or displaying their firearms to detain the individual. [Citation.]"  
People v. Moore
, 294 Ill. App. 3d 410, 415 (1998).  The "mere restraint of an individual does not turn an investigatory stop into an arrest. [Citation.]  Rather, it is the length of detention and the scope of investigation that distinguish an arrest from a stop."  
People v. Young
, 306 Ill. App. 3d 350, 354 (1999).  We conclude that the tactics used in conducting the investigatory stop involved an appropriate amount of force under the present facts and that the length of the detention did not transform the investigatory stop into an arrest.  However, our analysis cannot end here.  We must now turn to whether the investigatory stop was proper.

The purpose of a 
Terry
 stop is to allow an officer to investigate the circumstances that arouse suspicion; however, "'[a]n objective standard is used in determining whether the facts and circumstances known to the officer at the time of the stop would warrant a person of reasonable caution to believe a stop was necessary to investigate the possibility of criminal activity.' [Citation.]"  
People v. Moore
, 294 Ill. App. 3d 410, 415 (1998).  When a police officer makes a 
Terry
 stop he must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  
Terry
, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.  

"In determining whether an informant's statements provide sufficient basis for a 
Terry
 stop, a reviewing court should consider the informant's veracity, reliability, and basis of knowledge."  
People v. Sparks
, 315 Ill. App. 3d 786, 792 (2000), citing 
Alabama v. White
, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308, 110 S. Ct. 2412, 2415 (1990).  An informant's ability to predict a person's future behavior is an important indicator of reliability because "[w]hen significant aspects of the caller's predictions [are] verified, there [is] reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop."  
White
, 496 U.S. at 332, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417.

In defendant's case, the police officers received a tip from a known informant that around 8 p.m., a "male Latin named Victor, about 180 pounds, five-ten," would drive a Ford to 31st and Kostner to pick up two kilograms of cocaine from a tavern.  The key facts in defendant's case supporting the 
Terry
 stop are the informant's being known to the officers and the informant's formidable track record of reliable information (eight out of nine previous tips resulted in the seizure of contraband).  Importantly, the officers were also able to confirm the informant's prediction of defendant's future behavior as they were able to observe defendant carry what looked like two kilogram bricks of cocaine out of the tavern.  It is critical that the cocaine bricks were visible as defendant crossed the street and were also visible from outside defendant's vehicle.  Had the bricks been obscured from view, the police would not have had sufficient confirmation of specific and articulable facts that the defendant had committed, or was about to commit, a crime.  We conclude that the police had sufficient specific and articulable facts to justify stopping defendant to investigate the possibility of criminal activity.  Once the cocaine was discovered, the police had probable cause to arrest defendant.  Therefore, we conclude that the circuit court’s denial of defendant’s motion to suppress was not manifestly erroneous.  
Miller
, 173 Ill. 2d at 181.

IV. Expert Testimony Discovery Violation

The standard of review of a ruling on a discovery violation is whether the trial court abused its discretion. 
People v. Matthews
, 299 Ill. App. 3d 914, 918 (1998), citing 
People v. Weaver
, 92 Ill. 2d 545, 559 (1982).  Supreme Court Rule 412(a) requires the State to disclose certain information upon written motion of defense unless the matter is not subject to disclosure.  134 Ill. 2d R. 412(a).  Under this rule, the State is required to disclose the names, last known addresses and any reports or statements of persons the State intends to call as witnesses.  134 Ill. 2d R. 412(a).  The disclosure must also include any reports or results of scientific tests made by an expert in connection with the particular case.  134 Ill. 2d R. 412(a)(iv).  

Provided that a defendant can show a violation of the discovery rules, the relevant question becomes whether the defendant was surprised and prejudiced by the violation.  
People v. Carr
, 188 Ill. App. 3d 458, 466 (1989).  Absent a showing by the defendant of resulting surprise and prejudice, the discovery violation does not constitute reversible error.
 
People v. Jackson
, 131 Ill. App. 3d 128, 137 (1985).  

Defendant argues that his motion 
in limine
 to bar the State expert's valuation of the cocaine was wrongfully denied.  On the morning of trial, defense counsel learned of the State's intention to present the expert testimony of police officer Robert Montgomery, who would testify that 
based upon the seized cocaine's purity in comparison to the purity of an average user's dosage
, 
the value of the cocaine was $1 million.  The defense moved to bar the value testimony because the State had never disclosed Officer Montgomery's report indicating the street value of the cocaine.  The defense claimed that they were surprised by Montgomery's report and testimony because the defense had previously received a report from another expert for the State indicating that the value of the cocaine was $250,000.  

The prosecutor stated at the suppression hearing that because he had been recently assigned to the case, he had no way of knowing whether Officer Montgomery's report had been disclosed to the defense.  However, the prosecutor argued that Montgomery had been identified in discovery as an expert witness.  Thus, Montgomery's report "should come as no significant surprise" to the defense.  

 The circuit court denied defendant's motion because the defense had sufficient notice of all the State's experts and was aware of the quantity of cocaine.  The court concluded that Montgomery could testify as to the cocaine's value because the defendant could have "done whatever he wanted to do with respect to honing in that expert on what the value of the narcotics was."    Defendant now argues that he was prejudiced by the admission of Montgomery's testimony because the value estimation of $1 million was used in the State's closing argument as proof of intent to deliver as well as knowledge.  The State responds that the defendant had ample opportunity to obtain his own expert and to question Montgomery.  We agree.

The resolution of discovery violations and the imposition of  sanctions under Rule 415(g) (134 Ill. 2d R. 415(g)) is within the trial court's discretion, and the judgment of the court is to be given great weight.  
People v. Morgan
, 112 Ill. 2d 111, 135 (1986).  After reviewing the record, we cannot conclude that the circuit court abused its discretion in allowing Montgomery to testify.  The defense did not claim the State failed to disclose Montgomery on its list of potential witnesses.  Thus, the record is devoid of any evidence that would explain why the defense could not have questioned Montgomery prior to trial.  Furthermore, the record contains no evidence that would explain why the defense could not have retained its own expert to render an opinion on the value and purity of the cocaine.  If such reasons exist, they are not discernable from the record. It is defendant's burden to preserve and present a sufficient record on appeal.  
People v. Smith
, 106 Ill. 2d 327, 336 (1985).  Therefore, we hold that the circuit court did not abuse its discretion in denying defendant's motion 
in limine
 to bar Montgomery from testifying.  
Matthews
, 299 Ill. App. 3d at 918.

V. Disclosure of Confidential Informant

Once again, the standard of review of a ruling on a discovery violation is whether the trial court abused its discretion. 
Matthews
, 299 Ill. App. 3d at 918.  Supreme Court Rule 412(j)(ii) states: 

"Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused.  Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial."  134 Ill. 2d R. 412(j)(ii).

Provided that a defendant meets his burden of showing a need for disclosing the confidential informant's identity (
People v. Stoica
, 163 Ill. App. 3d 660, 666 (1987)), "a court should balance the strong public policy reasons favoring secrecy, namely, the protection of informants, against a defendant's need for disclosure in order to prepare his or her defense."  
People v. Rivas
, 302 Ill. App. 3d 421, 436 (1998).  The proper balancing of these competing interests "'depend[s] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" 
People v. Woods
, 139 Ill. 2d 369, 380 (1990), quoting 
Roviaro v. United States
, 353 U.S. 53, 60-62, 1 L. Ed. 2d 639, 645-46, 77 S. Ct. 623, 628-29 (1957).  

Courts consider several factors in applying this balancing test and determining whether fundamental fairness demands disclosure.  

"Those factors include (1) whether the request for disclosure relates to the fundamental question of guilt or innocence rather than to the preliminary issue of probable cause;  (2) whether the informant played an active role in the criminal act by participating in and/or witnessing the offense;  (3) whether the informant assisted in setting up its commission as opposed to being merely a tipster; and (4) whether it has been shown that the informant's life or safety would likely be jeopardized by disclosure of his identity. [Citation.]"  
People v. Taylor
, 269 Ill. App. 3d 772, 778-79 (1995)
.

In this case, defendant made two motions for the release of the confidential informant's identity and now argues that the circuit court "expected too much in requiring Mr. Chavez to prove the materiality and relevance of a witness unknown to him, whose identity he hoped to secure by the motion."  Defendant makes a good conceptual point that one cannot feasibly prove the relevance or materiality of a mystery witness shrouded in State secrecy.  However, the facts belie defendant's argument. 

 Defendant claimed in both motions to disclose that the informant was "a percipient [
sic
] witness to the alleged involvement of Mr. Chavez in this criminal transaction" and that "the informant could testify to the nature and extent of the conversations he had with Mr. Chavez prior to his arrival at the tavern and subsequent arrest; he can quite possibly give exculpatory evidence."  Logic leads us to conclude that if defendant did in fact have conversations with someone prior to his trip to the tavern, then he would have sufficient memory of that fateful conversation to make a good-faith showing of the materiality or relevance of the informant to warrant the disclosure of the informant's identity.  Moreover, in considering defendant's second motion to disclose, the circuit court ordered the State to produce the informant's "package" for an 
in camera
 inspection to determine the extent of the informant's activity in defendant's case.  Whether the 
in camera
 inspection ever occurred is a question to which neither the State nor the defense is able to provide an answer.  Without a basis in the record, we cannot assume either that the 
in camera
 inspection occurred or, if it did occur, that the judge abused his discretion in conducting such an inspection.   

Based 
on the record before us, the confidential informant appears to be a mere tipster.  Without evidence to the contrary in the record, we cannot conclude that the circuit court abused its discretion in balancing the strong public policy reasons  favoring the concealment of an informant's identity against the defendant's need for disclosure in order to prepare his defense.  
Matthews
, 299 Ill. App. 3d at 918.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

McNULTY and COUSINS, JJ., concur.